**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 21 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

RAED MOHAMMAD AL-
BATAINEH,

      Defendant-Appellant.

No. 00-3125
(District of Kansas)
(D.C. No. 99-CR-40002-02-SAC)

**ORDER AND JUDGMENT**[*]

Before **BRORBY**, **KELLY,** and **MURPHY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The court

therefore honors the parties' requests and orders the case submitted without oral

argument.

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After Raed Mohammad Al-Bataineh pleaded guilty to possession of pseudoephedrine in violation of 21 U.S.C. § 841(d)(2), the district court sentenced him to a term of imprisonment of twenty-eight months. On appeal, Al-Bataineh asserts that the district court erred in refusing to reduce his offense level pursuant to United States Sentencing Guidelines § 2D1.11(b)(2). This court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(2) and **affirms**.

Al-Bataineh was stopped by state law enforcement officials while driving on Interstate-70 through Shawnee County, Kansas. Al-Bataineh agreed to a request by the officers to search the vehicle. Inside the trunk, officers found an exceedingly large number of bottles containing pseudoephedrine tablets; each bottle had been opened and repackaged so that it contained at least twice, and possibly as many as five times, the number of tablets indicated on the label. In total, officers found 321,275 tablets of pseudoephedrine in the vehicle, weighing approximately 19.3 kilograms.

Al-Bataineh was arrested following the stop and agreed to submit to an interview with an agent of the Drug Enforcement Agency. During the interview, Al-Bataineh admitted that he was "hauling" the pseudoephedrine from Ohio to Nevada and that he was to be paid $1200 for doing so. Apparently, Al-Bataineh had sold his business less than two months prior to the acts constituting the

instant offense. He utilized part of the profits from that sale to finance the purchase of the pseudoephedrine.

After local Kansas authorities declined to file charges, Al-Bataineh was released from custody. Approximately two weeks later, Al-Bataineh was again arrested for committing a similar offense in Oklahoma City, Oklahoma.

Al-Bataineh was eventually charged in United States District Court for the District of Kansas with possessing "approximately 19 kilograms of pseudoephedrine, a list I chemical, having reasonable cause to believe that the listed chemical will be used to manufacture a controlled substance." Al-Bataineh eventually entered into a plea agreement with the government wherein he agreed to plead guilty to the information and waive grand jury indictment. In return, the government agreed to file no further charges for the actions at issue in the information, to recommend a three-level downward adjustment for acceptance of responsibility, and to file a motion for downward departure pursuant to U.S.S.G. § 5K1.1 to reflect Al-Bataineh's substantial assistance to the government.

At the time of his plea, Al-Bataineh submitted the following statement detailing his involvement in the offense:

> On December 18, 1998, I was driving through the state of Kansas with Mohammed Ahmad-Abu-Hardan. We were in a car which had within it a lot of repackaged cold medicine (Minithins, mainly).

> While I do not have a lot of knowledge about how drugs are manufactured, based on the fact that the seals on the bottles had been

-3-

broken, and five bottles worth of pills had been transferred to one bottle, there was reasonable cause for me to believe that the drugs in my car would eventually be used to help manufacture a controlled substance.

I knew that the Minithins were in my car, and I knew we were taking them to California to sell them for a profit. I am very sorry to have violated the drug laws of the United States.

After the district court accepted Al-Bataineh's guilty plea, the United States Probation Office prepared a presentence investigation report ("PSR"). The PSR concluded that Al-Bataineh had an offense level of 25 and a criminal history category of I, resulting in a sentencing range of 57 to 71 months. The PSR arrived at Al-Bataineh's offense level by reference to the chemical quantity table set out in U.S.S.G. § 2D1.11(d). Because Al-Bataineh possessed between six and twenty kilograms of pseudoephedrine, he started with an offense level of 28. *See* U.S.S.G. § 2D1.11(d)(2). The PSR recommended that Al-Bataineh receive a three-level reduction in his offense level pursuant to U.S.S.G. § 3E1.1(a) and (b), resulting in an ultimate offense level of 25.

Al-Bataineh objected to the PSR, asserting that his offense level should be decreased by three additional levels pursuant to U.S.S.G. § 2D1.11(b)(2). That section of the Guidelines provides as follows: "If the defendant is convicted of violating . . . § 841(d)(2) . . . , decrease by **3** levels, unless the defendant knew or believed that the listed chemical was to be used to manufacture a controlled

substance unlawfully."[1] In particular, Al-Bataineh asserted that although he clearly violated § 841(d)(2) because he had reason to believe pseudoephedrine would be used to manufacture a controlled substance, none of the information in the PSR demonstrated he was actually aware the pseudoephedrine would be used to manufacture illegal drugs.

In denying Al-Bataineh's objection, the district court found as follows:

> As the time of his plea, the defendant admitted that the broken seals on the bottles and the packaging of five bottles worth of pills into one bottle gave him reasonable cause to believe the pseudoephedrine would be used to manufacture a controlled substance. The offense conduct set out in the PSR includes more incriminating and culpable circumstances than those admitted by the defendant. The defendant sold his business in October of 1998 and used part of the proceeds to pay for the pseudoephedrine involved in the instant offense. The defendant was operating a vehicle on I-70 in Shawnee County, Kansas, when law enforcement officers stopped him on December 18, 1998. Officers searched the trunk of the vehicle and found 11 cases and four additional boxes of pills called "Mini-Pseudos." The bottles in those cases had been opened and more pills were added to each bottle. Officers found approximately 321,275 pills of pseudoephedrine. During his post-arrest interview,

---

[1]The purpose behind this provision is elucidated as follows in the commentary to U.S.S.G. § 2D1.11:

> Convictions under . . . § 841(d)(2) . . . do not require that the defendant have knowledge or an actual belief that the listed chemical was to be used to manufacture a controlled substance unlawfully. Where the defendant possessed or distributed the listed chemical without such knowledge or belief, a 3-level reduction is provided to reflect that the defendant is less culpable than one who possessed or distributed listed chemicals knowing or believing that they would be used to manufacture a controlled substance unlawfully.

U.S. Sentencing Guidelines Manuel § 2D1.11, cmt. n.7.

the defendant admitted he was hauling the pseudoephedrine from Ohio to Las Vegas, Nevada and that he was being paid $1,200 for his services. Just over three weeks after his arrest for the instant offense, the defendant was arrested in Oklahoma for possession of 368 bottles containing over 37,000 pills of pseudoephedrine.

From these circumstances, specifically, the defendant's use of his own money to purchase the pseudoephedrine, the sheer volume of pills being transported, the defendant's admission that he was being paid to transport them to California, and his commission of the very same criminal act less than a month after his arrest for the instant offense, the court finds that the defendant knew or believed that the pseudoephedrine was to be used to manufacture a controlled substance.

Dist. Ct. Ruling on Objection to Presentence Report, at 3-4. Even though the district court found that Al-Bataineh was not entitled to the benefit of § 2D1.11(b)(2), it did grant the government's § 5K1.1 motion. Pursuant to that motion, the district court sentenced Al-Bataineh to twenty-eight months imprisonment, a sentence which is approximately one-half of the low end of the applicable sentencing range absent Al-Bataineh's requested reduction pursuant to § 2D1.11(b)(2).

On appeal, Al-Bataineh asserts both that the district court's findings in response to his objection are inadequate and that the record does not support the district court's conclusion that he "knew or believed" the pseudoephedrine would be used to manufacture illegal drugs. Upon review of the record, this court concludes that both contentions are without merit.

This court "review[s] the district court's legal interpretation of the guidelines de novo, and review[s] its findings of fact for clear error, giving due deference to the district court's application of the guidelines to the facts." *United States v. Burridge*, 191 F.3d 1297, 1301 (10th Cir. 1999) (quotations omitted). "We will not disturb the [district] court's factual findings unless they are without support in the record, or unless after reviewing all the evidence we are left with the definite and firm conviction that a mistake has been made." *Id.* (quotation omitted).

Upon review of the district court's "Ruling on Objection to Presentence Report," this court concludes that Al-Bataineh's assertion that the district court did not make sufficient findings is without merit. In response to the objection, the district court began by noting that Al-Bataineh would be entitled to the three-level reduction pursuant to 2D1.11(b)(2) "unless the court finds that the defendant had *actual* knowledge or belief that the listed chemical was to be used to manufacture a controlled substance." Dist. Ct. Ruling on Objection to Presentence Report, at 2. The district court further noted that the government operated under the burden of proving that Al-Bataineh had the requisite actual knowledge. *See id.* at 2-3. Nevertheless, the district court noted that Al-Bataineh had not objected to any of the evidence set forth in the PSR and had not come forward with any additional evidence relevant to the inquiry of actual knowledge.

*See id.* at 3.  Accordingly, the district court pulled together all of the uncontested evidence in the PSR; set forth that evidence, as detailed above, in coherent and thoughtful manner; and found, in light of that uncontested evidence, that Al-Bataineh knew or believed that the pseudoephedrine would be used to manufacture illegal drugs.  *See id.* at 4-5.  In so doing, the district court clearly complied with the obligation to make findings as to all "controverted matters" as required by Fed. R. Crim. P. 32(c)(1).

We further conclude that the district court did not commit clear error in finding, as a matter of fact, that Al-Bataineh knew or believed that the pseudoephedrine would be used to manufacture illegal drugs.  Al-Bataineh's primary thrust on appeal in this regard is that there is no direct evidence of intent in the record.  As this court has previously noted, however, "[i]ntent and knowledge . . . can be inferred from surrounding circumstances and is rarely capable of direct proof."  *United States v. Leopard*, 936 F.2d 1138, 1141 (10th Cir. 1991) (quotations and citations omitted).  The surrounding circumstances in this case amply support the district court's finding of intent.  In particular, it must be noted that Al-Bataineh invested a substantial sum of his own money to purchase the pseudoephedrine and was expecting a substantial profit upon delivery of the pseudoephedrine to Nevada.  Furthermore, the number of pseudoephedrine tablets at issue in this case is substantial: 321,275 tablets

weighing more than nineteen kilograms. Al-Bataineh was aware that each bottle of tablets had been opened and packed with a quantity of pills far in excess of the contents listed on the label. Finally, Al-Bataineh committed the very same type of criminal act less than a month after his arrest for the instant offense. Taken together, these circumstances more than adequately support the district court's finding by a preponderance of the evidence that Al-Bataineh knew or believed the pseudoephedrine would be used to manufacture illegal drugs.

In sum, the district court's reliance on the uncontested facts in the PSR to resolve the only contested matter, Al-Bataineh's intent, was in accord with Fed. R. Crim. P. 32(c)(1). In addition, the district court's finding that Al-Bataineh knew or believed the pseudoephedrine would be used to manufacture illegal drugs is supported by the uncontested circumstantial evidence set forth in the PSR. Accordingly, the sentence imposed by the United States District Court for the District of Kansas is hereby **AFFIRMED**.

ENTERED FOR THE COURT:


Michael R. Murphy
Circuit Judge